UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AIDEN RELEFORD,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br><br>　　　　　　　　Defendant. | No.  C07-1105Z<br><br>ORDER |

THIS MATTER comes before the Court on appeal from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying plaintiff Aiden Releford's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-1383F.  Having reviewed all papers filed in support of and in opposition to the appeal, the Court AFFIRMS the Commissioner's decision denying DIB and SSI benefits to plaintiff and DIRECTS the Clerk to send a copy of this Order to all counsel of record.

**Background**

Plaintiff was born on August 30, 1961, and is currently 46 years old.  AR 43, 332. She completed high school and some post-secondary education.  AR 370.  Plaintiff

ORDER   1–

previously worked as a phlebotomist and a medical assistant, as well as a groundskeeper, which included both landscaping and cleaning duties for the Seattle Housing Authority. AR 347-48, 350.  Plaintiff has not engaged in substantial gainful activity since November 15, 2003, the date on which she alleges onset of her disabilities.  AR 16.  The Commissioner has determined that plaintiff suffers from the following severe impairments:  degenerative disc disease and sciatica syndrome, which causes chronic low back and left leg pain, and a popliteal synovial cyst, which causes pain in the right knee.  AR 16; *see* AR 193, 251.  Plaintiff first complained of back pain in August 2001, after slipping and falling at a department store.  AR 176.  A computerized tomography ("CT") scan in October 2001 and a magnetic resonance imaging ("MRI") scan in November 2003 showed mild disc bulges or protrusions between the third and fourth vertebrae of the lumbar spine ("L3/4").  AR 184, 193.

In 2004, plaintiff filed applications for DIB and SSI payments.  AR 43-45, 332-33.  In October 2006, Administrative Law Judge Ruperta M. Alexis found plaintiff ineligible for DIB or SSI payments because she has the requisite residual functional capacity to work as a reel assembler, final assembler, router assembler, or document preparer, which are sedentary, unskilled jobs existing in significant numbers in the national and local economy.  AR 21.  In May 2007, after receiving additional evidence, AR 6, the Appeals Council denied plaintiff's request for review, AR 3-5, making the ALJ's ruling the "final decision" of the Commissioner for purposes of 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner . . . may obtain a review of such decision by a civil action commenced within sixty days."  Plaintiff timely filed the present action challenging the denial of benefits.

ORDER  2–

**Discussion**

**A.     Standard of Review**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b); *see also* 20 C.F.R. § 404.1572 (defining substantial gainful activity as significant physical or mental activities done or usually done for pay or profit). If so, the claimant is not entitled to disability benefits, and no further evaluative steps are required. Step two asks whether the claimant has a severe impairment, or a combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not entitled to disability benefits, and again, additional analysis is not required. Step three involves a determination of whether any of claimant's severe impairments is equivalent to one that is listed in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant with an impairment that "meets or equals" a listed impairment for the requisite twelve-month duration is per se disabled and qualifies for benefits.

If the claimant is not per se disabled, then the question under step four is whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f) and 416.920(e) & (f). If the claimant can still perform past relevant work, then the claimant is not entitled to disability benefits and the inquiry ends there. On the other hand, if the opposite conclusion is reached, the burden shifts to the Commissioner at step five to prove that the claimant can make an adjustment to other work, taking into account the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(g) & 416.920(g). If the claimant cannot make such adjustment to other work, disability benefits may be awarded.

ORDER   3–

This Court's review of a decision reached via this five-step process is limited to assessing whether the Commissioner's denial of benefits is free of legal error and based on factual findings that are supported by substantial evidence. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); see 42 U.S.C. § 405(g).  Substantial evidence means more than a mere scintilla but less than a preponderance of evidence; it is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  The Court may not affirm simply by isolating a specific quantum of supporting evidence. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  If, however, the evidence reasonably supports both affirming and reversing the denial of benefits, the Court may not substitute its judgment for that of the Commissioner. *Reddick*, 157 F.3d at 720; see also *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld").

**B.     Issues on Appeal**

In this matter, plaintiff does not challenge the determinations under steps one through four, namely that plaintiff has not engaged in substantial gainful activity since November 15, 2003, that her impairments are severe but do not alone or in combination meet or equal a listed impairment, and that she cannot perform any past relevant work.  Plaintiff contests only the analysis under step five, arguing that the ALJ improperly assessed her residual functional capacity by (i) inappropriately discounting the opinion of a treating physician, and (ii) incorrectly discrediting plaintiff's testimony.  Plaintiff, however, does not assign any

ORDER  4–

error to the ALJ's assessment of the number of sedentary, unskilled jobs available in the national and local economy; she asserts only that she cannot perform even sedentary work.

### 1. Physician Opinions

The Ninth Circuit has distinguished between three classes of physicians (treating, examining, and consulting) in defining the weight to be given their opinions. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is given the most weight, followed by an examining physician, and then by a consulting physician. *Id.* at 830-31. In the absence of a contrary opinion, a treating or examining physician's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id.* at 830. If contradicted, a treating or examining doctor's opinion can be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

Here, the record contains opinions from two treating physicians, an examining physician, an examining nurse practitioner, and a medical consultant. In April 2004, Robert Kapanjie, D.O., a treating physician, opined that plaintiff was capable of sedentary work, meaning that she could lift a maximum of ten pounds, she could frequently lift or carry lighter articles like ledgers and small tools, and she could perform work generally involving sitting and a certain amount of walking and standing. AR 328. In December 2005, Theodore J. Kapanjie, D.O., another treating physician, indicated that plaintiff could not lift more than twenty pounds and should not walk more than twenty minutes in an hour block of time. AR 317. Less than one month later, in January 2006, Dr. Theodore Kapanjie changed his assessment to a maximum lifting weight of five pounds, with a limitation of 20 minutes at a time sitting and 15 minutes at a time standing. AR 320. In that same document, however, Dr. Kapanjie made the following observations:

> PATIENT HAS STRONG DISABILITY CONVICTIONS AND BELIEVES SHE IS NOT CAPABLE OF WORKING. She obviously does not want to take part in job work force. . . . PATIENT MAY NEED TO HAVE A PHYSICAL CAPACITIES EXAMINATION TO PROVE TO HER THAT SHE IS ABLE TO [DO] SOME TYPE OF WORK.

ORDER  5–

1 AR 321 (emphasis in original). Dr. Kapanjie followed about nine months later with a check-
2 box form stating only that plaintiff had reached "maximum medical improvement." AR 331.
3 This October 2006 form provided no specific information concerning plaintiff's functional
4 limitations. AR 329-31.

5 Shortly before Dr. Theodore Kapanjie issued his January 2006 evaluation, plaintiff
6 was examined by Gordon A. Irving, M.D., who stated in his report that plaintiff had positive
7 Waddell signs, which are indicative of a nonorganic source of lower back pain.[1] AR 268;
8 <u>see</u> Christopher B. Shields & Phillip E. Williams, Jr., <u>Low Back Pain</u>, 33 AM. FAM.
9 PHYSICIAN 173 (1986) (citing Gordon Waddell, et al., <u>Nonorganic Physical Signs in Low</u>
10 <u>Back Pain</u>, 5 SPINE 117 (1980)). Dr. Irving noted that "[w]eight loss is very important for
11 this patient" and he saw "[n]o sign of obvious nerve impingement." AR 269. In June 2006,
12 another examiner, Grace Grymes-Chapman, ARNP, opined that plaintiff could perform
13 sedentary work, but she was unable to walk, stand, or sit for more than ten to fifteen minutes
14 at a time. AR 324. In contrast, in 2004, a medical consultant concluded that plaintiff could
15 perform even light work, meaning occasionally lifting twenty pounds, frequently lifting ten
16 pounds, standing or walking about six hours in an eight-hour day, sitting about six hours in
17 an eight-hour day, and pushing or pulling without limitations other than the specified weight
18 restrictions. AR 126. The medical consultant determined that plaintiff's report that she
19 could not sit, stand, or walk longer than five minutes at a time was "not credible" and that the

---

[1] The Commissioner argues that plaintiff's positive Waddell signs establish that she is malingering. Defendant's Brief at 6 (docket no. 12). The ALJ, however, did not explicitly draw such conclusion, and Dr. Irving's brief notation does not support the Commissioner's assertion. As noted by the Ninth Circuit, the Waddell test "does not by itself constitute 'affirmative evidence' of malingering. The test establishes five 'signs' of nonorganic sources of lower back pain and does not distinguish between malingering and psychological conditions." <u>Wick v. Barnhart</u>, 173 Fed. Appx. 597, 598 (9th Cir. 2006). Moreover, only a finding of three or more of the five Waddell signs is "clinically significant." <u>Id.</u> at 598 n.1. In his report, Dr. Irving did not indicate how many or which of the Waddell signs were present, and therefore, the Commissioner's accusation of malingering stretches the record further than warranted.

ORDER  6–

severity or duration of plaintiff's symptoms were disproportionate to the severity or duration expected as a result of her medically determinable impairment. AR 130.

The ALJ found that plaintiff has the residual functional capacity to lift and/or carry ten pounds at a time, to sit up to six hours and to stand and/or walk up to two hours in an eight-hour day, to push or pull without limitation except for operating foot controls with her right foot, to frequently balance, kneel, crouch, or crawl, but only occasionally to stoop, and to communicate, manipulate items, and see without limitation. AR 17. Plaintiff asserts that the ALJ did not give proper weight to the opinion of Dr. Theodore Kapanjie. Plaintiff's argument lacks merit. Under either the "clear and convincing" or the "specific and legitimate" reasons standard, the ALJ appropriately disregarded the opinion of Dr. Theodore Kapanjie. As late as December 2005, Dr. Theodore Kapanjie indicated that plaintiff could lift up to twenty pounds and walk up to twenty minutes in a hour, which equates to over two hours in an eight-hour day. Both plaintiff's other treating physician, Dr. Robert Kapanjie, and an examining nurse practitioner provided consistent assessments that plaintiff could perform sedentary work. Less than one month after describing capabilities consistent with sedentary work, Dr. Theodore Kapanjie provided a significantly different and more limited picture, while at the same time offering a narrative that casts doubt on the veracity of plaintiff's complaints. *See* AR 321 (stating that plaintiff has "strong disability convictions," "obviously does not want to take part in job work force," and "need[s] to have a physical capacities examination to prove to her that she is able to [do] some type of work"). Plaintiff points to no treatment note or change in circumstance that would explain the sudden revision in Dr. Kapanjie's evaluation. In light of Dr. Kapanjie's earlier assessment, which was consistent with the opinions of two other medical practitioners, Dr. Irving's observation that nerve impingement was not apparent, and the medical consultant's controverting opinion, the ALJ appropriately discounted Dr. Kapanjie's opinion that plaintiff could "never" resume working and is "totally disabled." AR 330.

ORDER 7–

### 2. **Plaintiff's Testimony**

Plaintiff contends that the ALJ erred in discrediting her testimony. Because the ALJ did not identify any affirmative evidence of malingering, the ALJ's reasons for rejecting plaintiff's testimony must be "clear and convincing." <u>See</u> <u>Lester</u>, 81 F.3d at 834. Plaintiff testified that she can generally stand for five to ten minutes, or perhaps up to fifteen minutes on a good day, AR 357, that she can only walk a block or a block and a half, AR 362-63, and that she can sit for only five or ten minutes, AR 365-66. She indicated that she has shooting pain in her left leg "most of the time," and that she feels discomfort when she sits due to the cyst behind her right knee. AR 357-58. Plaintiff further stated that the cyst is inoperable "because of it being on that main artery and it could cause me to bleed to death if they try to take it off." AR 358. As the ALJ noted, plaintiff's medical records do not support this assertion. <u>See</u> AR 17. With regard to lifting, plaintiff told the ALJ that she considered her granddaughter, who then weighed about eight pounds, to be "heavy." AR 363. The ALJ concluded that, although plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 18.

Plaintiff argues that the ALJ inappropriately used inconsistencies between her testimony and the statements of her eldest son and her sister to question her credibility. Plaintiff's Opening Brief at 2-3 (docket no. 10). The ALJ, however, did not employ such reasoning; rather, the ALJ discounted the son's and the sister's reports. AR 19. In August 2004, both the son and the sister indicated that plaintiff required assistance from the son in dressing and bathing. AR 77, 86. The sister also listed cooking and using the toilet as activities with which plaintiff needed help. AR 77. The son stated that he prepared meals and did all the household chores, and that he assisted in caring for his then eight-year-old brother. AR 86-87. Dr. Irving's report reflects that, as of January 2006, the eldest son no longer resided with plaintiff. AR 268. In her testimony of October 2006, plaintiff indicated

ORDER  8–

that she cooked for herself and her younger son and that she did the laundry.  AR 354.  She did not provide any evidence that anyone was now assisting her with dressing, bathing, or using the toilet.  The ALJ was justified in disregarding the son's and the sister's statements as being outdated and inconsistent with plaintiff's current level of functioning.

With regard to plaintiff's credibility, the ALJ indicated "no doubt that the claimant experienced chronic pain," but found that plaintiff was not "as limited as she claims" because "reports to her physician show that she has been functioning at a high level." AR 18.  In fact, treatment notes indicate that plaintiff had lifted a 13-inch television, AR 297 (Feb. 2005), that she had been driving a motor vehicle, AR 295 (Apr. 2005), that her "pain has remained stable" and that she had been "fairly active around the house," AR 289 (July 2005), and that, on two separate occasions, she had slipped while taking out the garbage, AR 270, 271 (Jan. 2006).  As the ALJ observed, however, despite plaintiff's complaints of low back pain following the slips in January 2006, clinical testing during two visits approximately two weeks apart produced normal results, including negative bilateral straight leg raise, lack of paraspinal spasm or vertebral spine tenderness upon palpation, symmetrical reflexes, and normal gait.  AR 270-71.

The ALJ also commented upon inconsistencies in plaintiff's reports concerning the cyst behind her right knee.  In April 2006, plaintiff complained of knee pain, which she reported as mild to moderate and as having been present for one day.  AR 251.  Dr. Theodore Kapanjie's diagnosis was a popliteal synovial cyst, for which he prescribed elevation and an ace wrap for the knee.  _Id._  Less than two weeks later, on May 8, 2006, plaintiff visited Dr. Kapanjie again, this time indicating that the knee pain had been present for four to six weeks.  AR 248.  Dr. Kapanjie aspirated a "scant amount" of fluid from the cyst and injected the knee with Triamcinolone Acetonide, a corticosteroid, which provided "fairly significant relief of [plaintiff's] pain at the end of the visit."  _Id._  Only three days later, on May 11, 2006, plaintiff told Dr. Kapanjie that the right knee symptoms had been "ongoing for several

ORDER   9–

1   months." AR 246. At plaintiff's request, Dr. Kapanjie provided a referral to an orthopedist.

2   *Id.* By June 26, 2006, plaintiff had still not been seen by an orthopedist, and she then told

3   Dr. Kapanjie that she had experienced the right knee pain for more than two years. AR 235.

4   When plaintiff visited again on August 15, 2006, however, the time frame of her symptoms

5   had reduced down to three months. AR 231. The chart notes from the August appointment

6   indicate that plaintiff had been "hampered in finding an orthopedist willing to see her

7   because of her insurance." *Id.* The record does not reflect whether plaintiff was ever

8   examined by an orthopedist, except for plaintiff's unsubstantiated assertion that a specialist

9   told her the cyst was inoperable.

10   Based upon a review of the record as a whole, the Court concludes that the ALJ

11   correctly applied the relevant law and made findings supported by substantial evidence,

12   namely that, although plaintiff certainly experiences chronic pain, she is not as limited as she

13   claims and she is capable of sedentary work. The range of times plaintiff has reported that

14   her right knee has been bothering her, from one day, to a number of weeks, to several

15   months, to two years, and then back to months, as well as the range of activities plaintiff has

16   indicated performing, from driving, which generally requires sitting for more than the five or

17   ten minutes plaintiff claims is her limit, to lifting the garbage and a television, cast doubt on

18   her credibility. Thus, the ALJ provided "clear and convincing" reasons for disregarding

19   plaintiff's testimony, which was largely unsupported by the medical evidence, and the

20   Commissioner's decision denying DIB and SSI benefits to plaintiff is AFFIRMED.

21       IT IS SO ORDERED.

22       DATED this 14th day of May, 2006.

                                    Thomas S. Zilly
                                    United States District Judge

ORDER  10–